**Thomas William McGEE, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Driver Licensing.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 17, 2002.

Decided July 15, 2002.

---

Thomas W. McGee, appellant, pro se.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellee.

BEFORE: LEADBETTER, J., SIMPSON, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

On his own behalf, Thomas William McGee (Licensee) appeals from the order of the Court of Common Pleas of the Forty–Fourth Judicial District, Sullivan County Branch (trial court) that dismissed his statutory appeal of a one-year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (PennDOT) as a result of his refusal to submit to chemical testing pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)[1]. We affirm.

---

1. Section 1547(b)(1) of the Vehicle Code is commonly referred to as the Implied Consent Law. That section provides:

PennDOT notified Licensee that his operating privilege had been suspended for one year as a result of his refusal to submit to chemical testing on March 9, 2001. Licensee filed a statutory appeal, and a de novo hearing was held.

At the hearing, PennDOT called Pennsylvania State Trooper John Molitor as its only witness. Trooper Molitor testified that he responded to a call regarding a disabled vehicle a little after midnight on March 9, 2001. When he arrived at the scene, the vehicle was sideways in the road and Licensee was walking on the roadway. When questioned, Licensee admitted that he had placed the call for assistance and that he had been the operator of the vehicle. Licensee, however, denied that he had been in an accident.

Upon investigation, Trooper Molitor found that Licensee's vehicle had hit the right side of the roadway, had rolled over and was not drivable. The Trooper observed that Licensee had an obvious odor of alcoholic beverage on his breath and that he had red, glassy, bloodshot eyes and staggered when he walked. Based upon his observations and the fact that Licensee was unaware that he had been in an accident, Trooper Molitor administered two field sobriety tests, which Licensee failed. Licensee was placed under arrest for driving a motor vehicle while under the influence and was transported to the State Police Barracks at Laporte for a breath test. Trooper Molitor testified that initially Licensee agreed to submit to a breath test, but became uncooperative after being placed in the police car en route to the State Police Barracks.

Trooper Molitor testified that, at approximately 1:45 AM, he read to Licensee the chemical test warnings, the O'Connell warnings,[2] and Licensee signed PennDOT's implied consent form acknowledging the warnings. Trooper Molitor explained that he did not observe any injuries that would prevent Licensee from providing a proper breath sample, nor did Licensee complain of any. The Trooper, who is properly certified to administer the breath test, advised Licensee that he needed to provide two breath samples[3] and explained how to properly blow into the machine. He then began to administer a breath test using the Intoxilyzer 5000.[4]

If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

75 Pa.C.S. § 1547(b)(1).

2. The phrase O'Connell warning is a shorthand expression for a duty imposed upon a police officer to inform a motorist, who has been asked to submit to chemical testing, that the Miranda rights are inapplicable to a request for chemical testing under the implied consent provisions of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1). Department of Transportation, Bureau of Driver Licensing v. Boucher, 547 Pa. 440, 691 A.2d 450 (1997); Department of Transportation v. O'Connell, 521 Pa. 242, 555 A.2d 873 (1989).

3. PennDOT has adopted regulations regarding breath test procedures. In particular, 67 Pa.Code § 77.24(b) requires that alcohol breath tests shall be conducted by a certified breath test operator and that the procedures for alcohol breath testing shall include, at a minimum, two consecutive actual breath tests, without a required waiting period between the two tests.

4. Trooper Molitor testified that this particular machine makes a tone or sound as air is being blown into the machine mouthpiece; if no air is entering the machine, there is no tone. Testimony of Trooper Molitor, August 9, 2001, Hearing Transcript, p. 22.

Trooper Molitor testified that initially the machine was making a tone as Licensee began to blow into it, but that when Licensee observed his blood alcohol content (BAC) rising on the machine, the tone stopped and Licensee begin blowing his cheeks up and not blowing air into the machine. Testimony of Trooper Molitor, August 9, 2001, Hearing Transcript, p. 22. When the Trooper asked Licensee to blow properly into the machine, Licensee responded that he was doing so. The Trooper advised Licensee again to blow properly and that he needed to provide two breath samples. The Trooper gave Licensee a second opportunity to comply, but again, Licensee puffed up his cheeks and did not blow into the machine as instructed. Licensee failed to provide a breath sample sufficient to register within the three-minute cycle on the machine, and the test was aborted. The machine had recorded the first reading of 0.085, but did not register a second sufficient sample. Trooper Molitor also testified that there were no medical facilities in Sullivan County with a phlebotomist open at the time the test was administered and that the closest facility was approximately one hour's drive to Towanda or Tunkhannock. Upon admitting into evidence the implied consent form signed by Licensee, PennDOT rested.

Licensee called himself as a witness. He denied faking the test and testified that Trooper Molitor would not let him take the breath test a second time after he failed the first time. Licensee stated that he asked the Trooper to let him give a blood sample in lieu of the breath test, but that Trooper Molitor refused his request. On cross-examination, he admitted that he did not have a medical condition which would prohibit him from completing the breath test.

The trial court specifically found Licensee's testimony not to be credible. The trial court concluded that Licensee's pretended compliance was simply an effort at delay. Consequently, Licensee was deemed to have refused the breath test.

■ To suspend a licensee's operating privilege under Section 1547(b)(1) of the Vehicle Code, PennDOT must prove (1) that the licensee was arrested for driving while intoxicated and that the arresting officer had reasonable grounds to believe that the licensee was driving while intoxicated; (2) that the licensee was requested to submit to a chemical test; (3) that the licensee refused the test; and (4) that the licensee was warned that refusing the test would result in a suspension. *Postgate v. Department of Transportation, Bureau of Driver Licensing*, 781 A.2d 276 (Pa. Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 689, 796 A.2d 320 (2002).

■ Licensee only disputes the trial court's finding that he refused to submit to the breath test. He contends that the trial court was in error when it found that he failed to comply with the request to provide an adequate breath sample for chemical testing. Licensee asks us to reevaluate the testimony provided by him and Trooper Molitor which he believes shows that he cooperated during the breath testing. The trial court, however, did not find Licensee's testimony credible.

■ The law is well settled that determinations as to the credibility of witnesses and the weight assigned to their testimony are solely within the province of the fact-finder. *Millili v. Department of Transportation, Bureau of Driver Licensing*, 745 A.2d 111 (Pa.Cmwlth.2000). Because questions of credibility are for the trial court to resolve, and not this Court, we may not reverse the trial court's order on the ground that it erroneously accepted

and relied upon the testimony of Trooper Molitor. *Postgate.*

The Supreme Court has held that the failure to supply adequate breath samples during multiple attempts to administer a test was a deemed refusal to submit to testing. *Todd v. Department of Transportation, Bureau of Driver Licensing,* 555 Pa. 193, 723 A.2d 655 (1999) citing *Department of Transportation, Bureau of Driver Licensing v. Boucher,* 547 Pa. 440, 691 A.2d 450 (1997). The Court recognized "that the purposes of the implied consent law would be undermined if licensees, by their volitional conduct, were permitted to thwart testing during administration." *Todd,* 555 Pa. at 198–199, 723 A.2d at 658.

The testimony of Trooper Molitor established that Licensee failed to provide two adequate breath samples during the three-minute machine cycle. The trial court found as fact that Licensee was given a second opportunity to comply with the Trooper's request and failed to do so. As the trial court concluded, Licensee's pretended compliance was simply an effort at delay. We agree with the trial court that Licensee is deemed to have refused the test.[5]

■ Next, Licensee argues that it is his right under Section 1547 of the Vehicle Code to choose the type of test to be administered and that Trooper Molitor had no authority to deny his request for a blood test. We have consistently held that Section 1547 does not afford a driver a choice among the three tests provided under that section[6]; rather, it is the police officer who has the option to chose the type of chemical test to administer. *Tarka*

*v. Department of Transportation, Bureau of Driver Licensing,* 756 A.2d 138 (Pa. Cmwlth.2000) (licensee's request for a urinalysis in lieu of a breath test because of allegation that medication for blood poisoning would taint test results did not support his refusal to submit to breath test as requested by police officer); *Mooney v. Department of Transportation, Bureau of Driver Licensing,* 654 A.2d 47 (Pa.Cmwlth. 1994) (licensee's fear of needles was insufficient reason to refuse to submit to blood test because police have unfettered discretion in determining which test to administer); *Kostyk v. Department of Transportation,* 131 Pa.Cmwlth. 455, 570 A.2d 644 (1990) (Section 1547 of the Vehicle Code does not violate either U.S. Const. amend. IV or XIV because licensee had *no choice* of test that was to be used and the selection of the test was within the police officer's discretion); *McCullough v. Department of Transportation, Bureau of Traffic Safety,* 122 Pa.Cmwlth. 415, 551 A.2d 1170 (1988)(fear of contracting AIDS through needles used for blood test was not sufficient to refuse to take blood test requested by officer; offer to take urine test did not vitiate express refusal to take blood test). E.g., *Doolin v. Department of Transportation,* 113 Pa.Cmwlth. 296, 537 A.2d 80, 82 (1988) (A licensee's right to request chemical testing is limited to the situation where no test has been requested by the arresting officer.)

Because the Trooper had the right to choose the type of test and he chose to administer a breath test, he also had the

---

5. The Supreme Court has stated that the issue of whether a licensee has refused a chemical test is a question of law, subject to plenary review by an appellate court. *Todd v. Department of Transportation, Bureau of Driver Licensing,* 555 Pa. 193, 723 A.2d 655 (1999).

6. Section 1547(c) of the Vehicle Code, 75 Pa.C.S. § 1547(c), provides that the amount of alcohol or controlled substance in the defendant's blood may be shown by chemical testing of the person's breath, blood or urine.

right to deny Licensee's request for a different type of test.[7]

### ORDER

AND NOW, this 15th day of July, 2002, the order of the Court of Common Pleas of the Forty–Fourth Judicial District, Sullivan County Branch is hereby affirmed.

---

**7.** We also note that the trial court did not find that it was practicable to take Licensee to another facility to conduct a blood test. The trial court determined that even if Trooper Molitor had decided to obtain a blood sample, there was no facility with a phlebotomist available in Sullivan County at the time the testing was conducted, and that the next closest facility was at least a one-hour's drive to either Towanda or Tunkhannock. The trial court held that such a delay would have placed in question the validity of the sample as it related to the time Licensee was operating the motor vehicle.