**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**William BARKER, a/k/a William**
**Howard Barker, Jr.,**
**Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 2013.

Filed July 10, 2013.

Carl A. Parise, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Rebecca Good McBride, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BENDER, J., BOWES, J., GANTMAN, J., DONOHUE, J., ALLEN, J., OLSON, J., OTT, J., and WECHT, J.

OPINION BY BENDER, J.

William Barker, a/k/a William Howard Barker, Jr., appeals from the judgment of

sentence of six months' probation and a $1000 fine following his conviction of Driving Under the Influence of a Controlled Substance (DUI) and the summary offense of Operating a Vehicle Without Official Certification of Inspection. *See* 75 Pa.C.S. § 3802(d)(2), 4703(a) (respectively). Barker contends that the Commonwealth's evidence was not legally sufficient to sustain his DUI conviction. In addition, he argues that the trial court erred in determining that he had no enforceable right to an alternative chemical test pursuant to 75 Pa.C.S. § 1547(i), inasmuch as potentially serious health complications prompted him to refuse the blood test the officer ordered. Upon review, we find the evidence legally sufficient to sustain Barker's DUI conviction. Nevertheless, we conclude as well that the arresting officer's refusal to observe his statutory right to an alternative form of chemical testing violated his express statutory right, the deprivation of which stripped him of any ability he may have had to respond to the charges at issue here. Because such deprivation irreparably prejudiced Barker's ability to obtain the test at a time material to the conduct charged, and thereby stripped him of the ability to offer a defense, we are constrained to reverse the judgment of sentence and discharge the defendant.

Barker's conviction arises out of an incident of suspected drunken driving when, in the early morning hours of February 15, 2009, Officer Michael Naviglia[1] of the Springdale Township Police observed Barker's vehicle on Freeport Road tailgating the vehicle in front of him. As Barker's vehicle approached Officer Naviglia's police cruiser, the officer noted, in addition, that it did not have a current Pennsylvania State Inspection sticker. Officer Naviglia then turned and followed the vehicle whereupon he observed that the registration sticker on the license plate had expired as well. As the officer continued to follow the vehicle, he also noted that on a single occasion the vehicle strayed a single tire width over the center line. Although there were no vehicles approaching in the opposite direction, Officer Naviglia activated his emergency lights and made a traffic stop to further investigate Barker's state of sobriety.

When Barker opened his driver's side window in response to Naviglia's summons, the officer did not detect the smell of alcohol, but rather, the "very pungent odor of cooking grease." Barker also appeared very flushed and seemed to avoid eye contact. Naviglia observed that, when he did catch Barker's gaze, the defendant's eyes were "pinpointed," very red, and almost shut. Naviglia noted further that Barker's speech, although not slurred, was very slow, and that Barker was combative, describing Naviglia as a "dirty cop," and phoning the Springdale Police, ostensibly to report Naviglia to another officer.[2] Believing that Barker may have been incapable of safe driving, Naviglia determined to conduct field sobriety tests and ordered Barker from the car. As Barker got out, his movements were very slow and deliberate, prompting Naviglia to suspect that his balance and depth perception were "off" and that he was under the influence of a controlled substance.

Consistent with his observations, Officer Naviglia administered both the heel-to-toe

---

1. Officer Naviglia has since attained the rank of chief. However, because he was not chief at the time and because his status as a patrol officer appears to bear some significance in the subsequent encounter with the defendant, we refer to Naviglia by his rank at that time.

2. At the time of these events, Officer Naviglia's brother was chief of the Springdale Police.

test and finger-to-nose test, both of which Barker failed, as he was not able to walk heel-to-toe for the required distance and failed to bring his finger to the tip of his nose on two occasions, instead placing it elsewhere and then moving it.[3] After completing the tests, Barker asked for a breathalyzer, which Officer Naviglia declined as Barker's behavior and appearance did not indicate consumption of alcohol but seemed more consistent with drugs. Accordingly, Officer Naviglia transported Barker to a nearby hospital for a blood draw. While at the hospital, however, Barker declined the blood draw, explaining that he was a brittle diabetic, and could receive only "blind" needles in the abdomen as he had previously developed an infection in his leg as a result of an injection there. Instead, Barker requested to undergo a breathalyzer, urine, or hair follicle test, all of which Officer Naviglia refused, declining the urine test in the mistaken belief that he would have to "touch" the urine. N.T., 6/7/10, at 54 (responding to counsel's question on the grounds for his refusal stating, "I'm not touching somebody's urine").

Following the conclusion of the stop, Officer Naviglia transported Barker to the home of his sister, Karen Black. Subsequently, when Barker prevailed on his sister to take him back to the hospital for a urine test, ostensibly to prove his innocence, he discovered that Officer Naviglia had not returned his driver's license and identification, thereby precluding him from qualifying for such a test. Not until the following morning, when Black drove to the police station on her brother's behalf, was Barker able to retrieve his license and identification.

Barker's case proceeded to a non-jury trial before the Honorable Randall Todd on June 7, 2010. In its case-in-chief, the Commonwealth introduced the testimony of Officer Naviglia, who attested to the details of the stop as set forth above, as well as a photograph of Barker taken on the night in question. In the defense case, Barker called his sister, Karen Black, and also testified on his own behalf. Black testified that she and Barker own a tavern in Cheswick and that Barker had worked an extended shift starting on the morning of February 14, and had been called back to the tavern to close that night, when Officer Naviglia stopped him. She also testified that as an owner of the tavern for 13 years and a bartender for 25 years prior to that, she was familiar with the signs of intoxication and had had occasion to "shut off" patrons who could no longer drive safely. She answered as well that Barker had not been drinking on the night in question and that he was a severe diabetic whose condition precluded his ingestion of alcohol or illegal drugs at all. In addition, she related that after Officer Naviglia drove Barker to her home, Barker called the hospital to arrange a blood test and also called the police department to get his identification back. Barker was not successful, however, prompting Black to drive to the police station the following morning to retrieve his driver's license and identification for him.

Barker testified on his own behalf, that he had been at the tavern from 5:00 a.m. until 6:30 p.m., preparing special fare for Valentine's Day and that he left to go to sleep with the intention of returning that night to close the tavern. He had been cooking all day and, consequently, smelled of cooking oil when Officer Naviglia stopped him. In addition, Barker conceded that he had called Officer Naviglia a "dirty cop" because he had prior encounters with Naviglia and that he knew the

---

3. Other officers called to the scene had also observed the tests.

officer to lie. He contradicted Naviglia's version of events accordingly, offering a detailed recitation of the night's events and indicating that he had complied with instructions for each of the tests administered. When Officer Naviglia told him he had failed he appealed to other officers who had been watching. They responded that he had failed because Officer Naviglia said he had. Barker testified also that although Officer Naviglia had a drug-trained dog in his police vehicle, he never took the dog from the car.

Barker agreed with Officer Naviglia's testimony that he had refused to submit to a blood test at the hospital, but clarified his reasons, stating that he had previously received an injection at the hospital in question and had developed a severe infection that compelled his hospitalization at another facility for seven days. Barker insisted, however, that he had asked to take another test:

> But the whole time I was there I was asking to take any test. I would take any test and I would pay for any test. I wanted to prove my innocence. And I said, [t]he only thing is, you're not sticking any needle in my body no more, at that hospital in particular.
>
> * * * *
>
> I had an infection from that hospital, but I spent 7 days in West Penn.

N.T., 6/7/10, at 72. Notwithstanding Barker's repeated requests, Officer Naviglia refused to authorize a different test. Barker then told the officer he was going to return to the hospital to have a urine test as he wished to prove his innocence. Neverthe-

less, he was not able to obtain the test as hospital personnel would not conduct it without his photo identification, which had not been returned by Officer Naviglia.[4]

At the conclusion of the testimony, Barker's counsel argued strenuously that the evidence adduced was not sufficient to sustain the DUI charge and that police conduct had prejudiced Barker's right to an alternate test as prescribed by the Motor Vehicle Code, 75 Pa.C.S. § 1547(i). The Commonwealth argued to the contrary that the officer's observations were sufficient to establish DUI even without a blood test and Barker's argument in favor of an alternative test under section 1547(i) was a "red herring." N.T., 6/7/10, at 103. The prosecutor offered the following reasoning: "Although 1547(i) does permit requests for blood, urine and breath, [75 Pa.C.S. § ] 3802 only accepts blood and breath. And if you were to have a hot urine under 1547(i) it still wouldn't be admissible under 3802."

Following a recess for deliberation, the trial court found Barker guilty as charged and imposed a sentence of six months' probation, one week of intermediate punishment with work release, and a fine of $1000. The court also explained Barker's right to appeal, which the defendant has now exercised. Barker's Statement of the Questions Involved specifies the following questions for our review:

I.  Did the trial court err as a matter of law in finding there was sufficient evidence to convict Defendant of violating Section 3802(d)(2) of the Vehicle Code when there were no drugs

---

4.  Barker described his attempts to retrieve his identification as follows:

    I called [Officer] Naviglia 14 times before I called 911 two times, and then I called after that, until 10:00 a.m. in the morning, not 7:00 a.m., 10:00 a.m. in the morning. From 2:00 o'clock in the morning the police

didn't answer their phone till 10:00 a.m. in the morning, until the next guy, Officer Black, finally answered the phone. He said, yes, we accidentally kept your license, you can come get it now.

N.T., 6/7/10, at 74.

found in Defendant's vehicle, no drugs found on Defendant's person, an available drug sniffing dog was not even used in the initial contact with the Defendant, when the Defendant did not take a blood test due to his brittle diabetic condition, of which the arresting officer was advised, and where Defendant repeatedly asked for a breath test, urine test or hair test, which the arresting officer declined to permit, and the police officer did not return Defendant's driver's license when he was released to his sister which caused defendant not to be able to get an independent test because he had no other identification?

II. Whether the trial court erred as a matter of law in finding that the Commonwealth had no burden to honor Defendant's request for a breath or urine test in accordance with Section 1547(i) of the Vehicle Code when the officer thwarted the Defendant's request by not returning his driver's license and by not permitting him to perform the test requested?

Brief for Appellant at 4.

◼◼◼◼ Barker's first question challenges the sufficiency of the evidence to establish his violation of Motor Vehicle Code section 3802(d)(2), which proscribes the Driving Under the Influence of a Controlled Substance. Brief for Appellant at 18. As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer,* 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.; see also Commonwealth v. Aguado,* 760 A.2d 1181, 1185 (Pa.Super.2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence."). "[W]here no single bit of evidence will by itself conclusively establish guilt, the verdict will be sustained where the totality of the evidence supports the finding of guilt." *Commonwealth v. Thomas,* 522 Pa. 256, 561 A.2d 699, 704 (1989).

◼◼◼◼ Thus, our Courts have recognized that proof of guilt may be inferred entirely from evidence of circumstances that attended the commission of the crime. *See Brewer,* 876 A.2d at 1032. "The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy,* 795 A.2d 1025, 1038–39 (Pa.Super.2002)). Nevertheless, "[t]he requirement of the law [remains] that in order to warrant a conviction[,] the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of the accused beyond any reasonable doubt." *Commonwealth v. Bybel,* 531 Pa. 68, 611 A.2d 188, 189 (1992) (quoting *Commonwealth v. New,* 354 Pa. 188, 47 A.2d 450, 455 (1946)).

[E]vidence sufficient to implicate an accused in a crime must be something more than evidence showing remote connection between the accused and the crime, or evidence that merely raises a

suspicion of guilty intention.... An accused is entitled to an acquittal if his guilt of the crime charged is not the only reasonable interpretation of which the facts adduced against him are susceptible. Guilt must be proved and not merely conjectured.

*Id.*

In this case, the trial court found Barker guilty of Driving Under the Influence of Controlled Substance pursuant to 75 Pa. C.S. § 3802(d)(2). That section defines the offense as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

\* \* \* \*

**(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

\* \* \* \*

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(2).

■ Although Barker describes his challenge as one to the legal sufficiency of the evidence, he offers no analysis of any particular element of the foregoing offense, instead comparing and contrasting the testimony he offered at trial with that of Officer Naviglia. Indeed, he assails Naviglia's testimony as "exaggeration" and "bald allegation and opinion," arguing that Naviglia was motivated by animosity based on prior encounters between the two men, and suggesting that his conviction is invalidated accordingly. Brief for Appellant at 11, 13, 15. We acknowledge that various passages in the record do suggest a degree of animosity between Barker and Officer

Naviglia. The trial court did as well, noting "[a]pparently, there's bad blood." N.T., 6/7/10, at 104. Nevertheless, the suggestion that a witness may have offered his narrative in the service of a conviction—rather than the truth to which he has sworn—does not render evidence legally insufficient; rather, it impugns the weight of the evidence.

■ Accordingly, we can discern no grounds for the relief Barker seeks. Officer Barker testified under oath to his observations on the night in question based on the field sobriety tests that he administered. Our cases recognize that field sobriety tests, such as those administered here, "are grounded in theories which link an individual's lack of coordination and loss of concentration, with intoxication." *Commonwealth v. Ragan,* 438 Pa.Super. 505, 652 A.2d 925, 928 (1995). Barker does not suggest that field sobriety tests are not diagnostic of impairment by controlled substances, and therefore has laid no foundation for the notion that the record is devoid of evidence bearing on controlled substances. To the extent the trial court, sitting in its capacity as finder of fact, accepted Officer Naviglia's recollection of those tests as true, we are constrained to accept the court's findings. Indeed, the factfinder is free to accept as true all, part, or none of the evidence and to base its verdict upon its determination of credibility. *See Commonwealth v. Hunzer,* 868 A.2d 498, 505 (Pa.Super.2005) (quoting *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001) ("Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.... [W]hile passing upon the credibility of witnesses and the weight of the evidence produced, [the fact-finder] is free

to believe all, part or none of the evidence.")).

■ In addition, Barker appears to suggest that the inability of the police to find controlled substances in his car establishes that he had not used them, and that Officer Naviglia's failure to use his drug-trained dog at the scene suggests that drugs could not be found. Brief for Appellant at 11–13. These assertions do not implicate the sufficiency of the evidence so much as they argue in favor of an adverse inference, a concept inextricably linked to the weight of the evidence *rather than the extent to which it establishes the elements of the crimes charged.* The mere allegation that no drugs were found in the defendant's car or on his person cannot substantiate a claim of not having been under the influence of such substances while driving. Nor is the fact that Officer Naviglia did not use the drug sniffing dog at his disposal indicative of an absence of controlled substances in Barker's body; in this context, an absence of evidence is not itself evidence of anything. Instead, Barker's claims amount only to an attack on witness credibility, a matter far removed from the purview of an appellate court given the remote nature of our review. Because Barker limits his argument to such a credibility challenge and fails to identify any omission from the record that undermines the legal sufficiency of the evidence to sustain the elements of the offense, we conclude that the trial court did not err in finding the evidence sufficient. Accordingly, we find Barker's sufficiency challenge unavailing.

Nevertheless, our analysis of the testing statute at issue and the extent of prejudice Barker suffered by Officer Naviglia's refusal to honor the statute's provisions, yields a resolution independent of evidentiary sufficiency and debases the trial court's verdict. Quite simply, Officer Na-

viglia's refusal to allow an alternate test in accordance with Barker's request violates the mandate of 75 Pa.C.S. § 1547(i), and deprived him of admissible evidence that, had it been available, would have been relevant to the charges at issue. This claim comprises the gravamen of Barker's second question, in support of which he argues that section 1547(i) vests licensed drivers with a statutory right, the deprivation of which undermines his ability to counter the Commonwealth's allegations. Brief for Appellant at 16. We find Barker's position compelling, as it clarifies the statutory intent and illustrates the inadequacy of the Commonwealth's contrary interpretation.

■ Inasmuch as the right Barker claims derives from a provision of the Motor Vehicle Code, our review is guided and circumscribed by the terms of the Statutory Construction Act of 1972. The paramount consideration and focus of that act is encompassed in section 1903, which provides quite simply as follows:

**§ 1903. Words and phrases**

(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

(b) General words shall be construed to take their meanings and be restricted by preceding particular words.

1 Pa.C.S. § 1903. Among the precepts that derive from this provision is our time-honored recognition that the term "shall," as it appears in statutory language typically denotes a lack of discretion by the person directed to carry out the task directed. In short, "shall" means "must." *See Cran-*

*berry Park Assoc's ex rel. Viola v. Cranberry Tp. Zoning Hearing Bd.,* 561 Pa. 456, 751 A.2d 165, 167 (2000) ("[T]he word 'shall' denotes a mandatory, not permissive instruction."); *see also* BLACK'S LAW DICTIONARY 1375 (6th ed. 1990) ("As used in statutes, contracts, or the like, this word is generally imperative or mandatory.... The word in ordinary usage means 'must' and is inconsistent with a concept of discretion."); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2085 (1993) (The first definition of shall states: "1a: will have to; must").

The chemical testing statute at issue provides, in relevant part, as follows:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

**(a) General rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock); or

**(b) Suspension for refusal.**—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

* * * *

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

(ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

**(b.1) Other suspension for refusal.**—

(1) If any person placed under arrest for a violation of section 1543(b)(1.1) or 3808(a)(2) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted; but, upon notice by the police officer and provided no suspension is imposed pursuant to subsection (b), the department shall suspend the operating privilege of the person for a period of six months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privileges will be suspended upon refusal to submit to chemical testing.

* * * *

**(c) Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this

title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, . . . shall be admissible in evidence.

\* \* \* \*

    (2) (i) Chemical tests of blood or urine, if conducted by a facility located in this Commonwealth, shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health or by a Pennsylvania State Police criminal laboratory. For purposes of blood and urine testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L. 1539, No. 389), known as The Clinical Laboratory Act.

\* \* \* \*

**(e) Refusal admissible in evidence.**— In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

*(f) Other evidence admissible.*—Subsections (a) through (i) shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of alcohol.

**(g) Test results available to defendant.**—Upon the request of the person tested, the results of any chemical test shall be made available to him or his attorney.

\* \* \* \*

**(h) Test by personal physician.**—The person tested shall be permitted to have a physician of his own choosing administer an additional breath, blood or urine chemical test and the results of the test shall also be admissible in evidence. The chemical testing given at the direction of the police officer shall not be delayed by a person's attempt to obtain an additional test.

*(i) Request by driver for test.*—Any person involved in an accident or placed under arrest for a violation of section 1543(b)(1.1), 3802 or 3808(a)(2) may request a chemical test of his breath, blood or urine. Such requests shall be honored when it is reasonably practicable to do so.

75 Pa.C.S. § 1547 (emphasis added).

    Upon review of the foregoing text, we discern a legislative blueprint for proving a motorist's use of alcohol and controlled substances that balances the governmental interest of obtaining evidence of individual violations with the right of the individual to due process and some measure of autonomy where circumstances render an officer's choice of testing methods not "reasonably practicable" for the motorist involved. Accordingly, the statutory language establishes an irrefutable presumption that the motorist has consented to testing, *see id.* at § 1547(a), and delineates the tests that may be used, and the manner in which they must be conducted, *see id.* at § 1547(b), (c). Nevertheless, it also provides a motorist with a right to refuse testing—subject to a schedule of penalties, *see id.* at § 1547(b)(1), (b.1), and to appeal the penalty assessed, *see id.* at

§ 1547(b)(3). Most significantly, the statute also provides that the motorist may obtain chemical testing from his own physician, *see id.* at § 1547(h), and that he may request an alternate means of testing at the time of arrest that *"shall"* be honored "when it is reasonably practicable to do so," *see id.* at § 1547(i) (emphasis added). The results of both such tests are to be released to the motorist or his attorney and are admissible in court *"as evidence of whether or not the defendant was under the influence of alcohol."* See *id.* at § 1547(f), (g) (emphasis added).

■ The interplay of these latter provisions, *i.e.,* § 1547(f), (g), (i), is critical to our disposition of Barker's claims of error. Initially, we note that the direction of section 1547(f) that the results of any tests conducted may be admitted "as evidence of whether or not the defendant was under the influence of alcohol[,]" applies equally to the charges arising in the context of controlled substances. We discern no legitimate purpose in any other interpretation; indeed it appears contrary to the otherwise inclusive language of the statute. Moreover, the statute creates an imperative under section 1547(i) that if the motorist requests one of the alternate means of chemical testing, the officer is required to honor the request when reasonably practicable. *See Cranberry Park Assoc's,* 751 A.2d at 167 ("[T]he word 'shall' denotes a mandatory, not permissive instruction."). Significantly, the text conditions alternative testing *only on circumstances that render such testing impracticable.* Stated simply, the statute presumes the validity of the motorist's request and vests the officer with discretion to decline the request only if circumstances render the testing "incapable of being put into practice with the available means." Definition of *"Impracticable"* at *http://dictionary. reference.com.* Thus, this language does not countenance the manner of arbitrary refusal by the arresting officer evident here, but allows the officer to decline alternative testing only if the test requested is not within the means available at the time the testing is sought. By the same taken, this element of practicability acts as a safeguard against the whims of willful motorists who might demand alternate forms of testing as retribution upon the arresting officer. The statutory scheme offers no quarter to arbitrary conduct by either a motorist under arrest or the arresting officer, but instead imposes an expectation on both that testing shall be carried out in recognition of the practical constraints on the officer with due regard for the motorist's individual rights.

Once the testing has been undertaken, the results of any such test, whether conducted at the officer's request or privately by the motorist, are admissible in evidence as to all charges under section 3802—not merely those dependent upon proof of specific chemicals or levels of those chemicals in the subject's body. *See* 75 Pa.C.S. § 1547(f). Consequently, any refusal by an arresting officer to allow alternate testing as requested by the motorist deprives that motorist of evidence admissible in *any* subsequent prosecution under section 3802—not merely those dependent upon the results of chemical testing. Thus, we find unconvincing the Commonwealth's assertion that "Appellant has no standing to make such an argument because he did not proceed to trial on any charge involving refusal of testing and 75 Pa.C.S.A. § 3802(d)(2)contains no language requiring impairment be established through chemical testing." Brief for Appellee at 19. To the extent that section 3802(d)(2) [5] ad-

---

5. Section 3802(d)(2) provides as follows:

**(d) Controlled substances.**—An individual

dresses the degree to which ingestion of a controlled substance may have compromised the motorist's ability to drive safely, the results of chemical testing are admissible to prove—or rebut—charges under that section. *See* 75 Pa.C.S. § 1547(f). The refusal of an officer to allow such testing, when practicable, imposes so significantly on the motorist's attendant right to that evidence as to obviate any suggestion that the manner of such testing is consigned to the unfettered discretion of the arresting officer. Thus, where the motorist requests alternate practicable testing and offers a facially valid reason for his request, we discern no basis in the statutory language for the officer to refuse the request.[6]

■ Inasmuch as the results of any chemical tests conducted were admissible in evidence, Officer Naviglia's refusal to allow alternate testing pursuant to section 1547(i), in accordance with Barker's multiple requests, is a clear violation of the statutory right created in favor of any motorist arrested on the charge of Driving Under the Influence. Inasmuch as Officer Naviglia had transported Barker to a hospital for testing, Barker's request for a urine test was neither impracticable nor unreasonable. Indeed, Barker provided more than ample rationale that made any alternate form of testing the only humane and responsible course of action and should have compelled Officer Naviglia to consent to the urine test without delay.[7] Inasmuch as the officer did not consent, as section 1547(i) required under the circumstances, the resulting trespass of Barker's right to the admissible evidence that testing would have produced is a significant deviation from the legislative intent documented in the chemical testing statute. The attendant illegality deprived Barker of substantial evidence that might well have soundly rebutted the Commonwealth's allegations. We cannot countenance any such failure by law enforcement to observe the will of the people as recorded in the legislation of their elected representatives. Because the officer's failure to comply with the statute irreparably violated Barker's statutory right to the results of the chemical testing, we are constrained to recognize the infirmity of this conviction and reverse the judgment of sentence accordingly.

---

may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

\* \* \* \*

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

6. In this regard, we find this case readily distinguishable from the decisions cited by the Commonwealth in which the Commonwealth Court resolved the license suspension appeals of motorists who had refused testing *without a valid reason. See e.g., McGee v. Commonwealth,* 803 A.2d 255, 259–60 (Pa. Cmwlth.2002) (affirming a license suspension and officer's refusal of an alternative to a breath test where motorist did not aver any medical condition that prevented his completing the breath test); *Mooney v. Com., Dept. of*

*Transp. Bureau of Driver Licensing,* 654 A.2d 47, 50 (Pa.Cmwlth.1994) (concluding that motorist's statement that she feared needles did not provide a satisfactory reason on which to base her request for alternate testing).

7. Officer Naviglia's explanation of his refusal to consent to a urine test, *i.e.,* "I'm not touching somebody's urine[,]" appears to reflect a fundamental misunderstanding of the chemical testing process. Of course, the officer would have been no more exposed to Barker's urine than to Barker's blood, both of which would have been obtained by a hospital technician under laboratory conditions and confined to sterile containers. Given Officer Naviglia's status as a veteran of 18 years on the police force, we can presume his awareness of such ministerial details.

Judgment of sentence **REVERSED.** Defendant **DISCHARGED.**

President Judge Stevens files a Concurring and Dissenting Opinion in which Judge Allen joins and Judge Gantman Concurs in the Result.

## CONCURRING AND DISSENTING OPINION BY STEVENS, P.J.

While I agree with the Majority's determination that the evidence was legally sufficient to sustain Appellant's DUI conviction, I disagree with its statement that "Officer Naviglia's refusal to allow an alternate test in accordance with Barker's request violates the mandate of 75 Pa.C.S. § 1547(i), and deprived him of admissible evidence that, had it been available would have been relevant to the charges at issue." Because I respectfully conclude the Majority is usurping the role of the Legislature by its sweeping policy pronouncement and creating a tremendous burden on law enforcement, I dissent.

The Majority engages in a statutory interpretation of 75 Pa.C.S. § 1547 wherein it acknowledges that the § 1547(a) establishes "an irrefutable presumption that the motorist has consented to testing," but finds § 1547(i) provides that a motorist may request an "alternate" means of testing at the time of arrest that shall be honored when it is reasonably practicable to do so. The Majority further reasons that the results of both tests are to be released to the motorist or his attorney and are admissible in court as evidence of whether or not the defendant was under the influence of alcohol or a controlled substance. The Majority's reading of the statute leads it to the sweeping conclusion that the statute "creates an *imperative* under section 1547(i) that if the motorist requests one of the alternate means of chemical testing, the *officer is required* to

honor the request when reasonably practicable." (emphasis added).

Such an interpretation of the chemical testing statute at issue creates a statutory right for a motorist to choose his or her testing methodology where one simply does not exist, for nowhere does the plain language of the statute vest the motorist with such a right. To the contrary, a reading of 75 Pa.C.S. § 1547(a) indicates that a motorist has consented to one or more chemical tests of breath, blood or urine for the purpose of determining the presence in his system of alcohol or a controlled substance, and if he refuses to submit thereto, the test will not be performed but his operating privileges will be suspended. 75 Pa.C.S. § 1547(i) indicates a motorist "may request a chemical test of his breath blood or urine," and provides that the request will be honored where it is "reasonably practicable to do so."

Nowhere does subsection (i) proclaim that a motorist's request will always be granted or that the type of test he or she requests will be given in lieu of the test an officer would have chosen to have administered under subsection (a). Indeed, had it been the intention of the Legislature to vest the motorist, rather than the police officer, with the power to choose the type of chemical test to be administered, the Legislature would have included language to that effect in subsection (a) and it is within the province of that body to amend the statute accordingly. Our Court should not make such a sweeping policy pronouncement and interfere in the legislative process.

The Majority's analysis of the statute also places an undue burden upon police officers to attempt to meet the varying requests of each motorist whom the officer suspects has been driving under the influence of alcohol or a controlled substance. It's conclusion that subsection (i) compels

an officer to placate a motorist's request for an alternate means of chemical testing would circumvent the plain language of law and open the floodgates for defendants to attempt to manipulate its meaning under the guise of the constitution.

Decisions rendered by the Commonwealth Court are not binding on this Court. *Beaston v. Ebersole*, 986 A.2d 876, 881 (Pa.Super.2009) (citation omitted) (stating that while decisions of the Commonwealth Court are not binding upon this Court, we may elect to follow the Commonwealth Court decisions if we find the rationale persuasive). I note that the Commonwealth Court has stressed:

> It is well settled that the police officer, not the licensee, has the option to choose the type of chemical test to be performed. We have consistently held that Section 1547(i) does not afford a licensee a choice among the three tests listed; rather it is the police officer who has the option to choose the type of chemical test to be administered and Section 1547(i) is specifically limited to situations where no test has been requested by the arresting officer.

*Lemon v. Com., Dept. of Transp., Bureau of Driver Licensing*, 763 A.2d 534, 539 (Pa.Cmwlth.2000) (citation omitted).

For the reasons stated above, I find this language persuasive, and I disagree with the Majority's contention that "where the motorist requests alternate practicable testing and offers a facially valid reason for his request, we discern no basis in the statutory language for the officer to refuse the request." As such, I respectfully dissent.