# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kelley Coogan             :

                             :

          v.             :    No. 1915 C.D. 2017

                             :    Submitted: November 2, 2018

Commonwealth of Pennsylvania,   :

Department of Transportation,    :

Bureau of Driver Licensing,      :

               Appellant    :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**               **FILED: January 4, 2019**

In this appeal, the Department of Transportation, Bureau of Driver Licensing (PennDOT) asks whether the Court of Common Pleas of Philadelphia County (trial court) erred in sustaining the statutory appeal of Kelley Coogan (Licensee) and rescinding the one-year suspension of her operating privilege imposed pursuant to Section 1547(b)(1)(i) of the Vehicle Code, commonly known as the Implied Consent Law.[1]  PennDOT contends the arresting officer credibly testified that he asked Licensee to submit to a chemical blood test and that Licensee refused to submit to the test.  Thus, PennDOT asserts, this Court should reinstate the one-year suspension of Licensee's operating privilege.  Upon review, we reverse.

---

[1] Section 1547(b)(1)(i) requires any person placed under arrest for driving under the influence "to submit to chemical testing … [and if that person] refuses to do so, the testing shall not be conducted but upon notice by the police officer, [PennDOT] shall suspend the operating privilege of the person … for a period of 12 months."  75 Pa. C.S. §1547(b)(1)(i).

PennDOT notified Licensee of the one-year suspension of her operating privilege as a result of her refusal to submit to chemical testing. Licensee appealed to the trial court.

The trial court held a hearing at which PennDOT presented the testimony of Pennsylvania State Police Trooper Ryan Kovacs (Trooper Kovacs). It also presented a packet of certified documents. Licensee, who appeared with counsel, testified on her own behalf. She also presented a copy of PennDOT's DL-26B Form and a CD-ROM that contained a video recording from an on-board device in Trooper Kovacs' patrol vehicle.

In its Pa. R.A.P. 1925(a) opinion, the trial court set forth the following factual background. Trooper Kovacs testified that in March 2017, he observed Licensee commit multiple traffic violations while driving westbound on Interstate 76. Trooper Kovacs testified he observed Licensee's vehicle drift out of its lane across the dotted lines. Trooper Kovacs then observed Licensee's vehicle exit the highway onto a two-lane ramp. Licensee drove her vehicle on top of the center dotted lines all the way down the ramp. Upon reaching the end of the ramp, Trooper Kovacs testified, Licensee did not use a turn signal when she made a right turn onto Green Lane. Trooper Kovacs also observed Licensee's vehicle come to a complete stop at a traffic light where it stopped ahead of the pedestrian crosswalk line.

At that point, Trooper Kovacs initiated a traffic stop. Upon encountering Licensee, Trooper Kovacs detected the odor of alcohol emanating

2

from Licensee's vehicle. He also observed Licensee's speech was slurred and her eyes were glassy and bloodshot. Trooper Kovacs instructed Licensee to exit her vehicle. He then conducted three field sobriety tests; however, Licensee did not complete any of the tests in a satisfactory manner. Trooper Kovacs also attempted to perform a preliminary breath test, but he could not collect an adequate sample.

Trooper Kovacs arrested Licensee for driving under the influence of alcohol (DUI). He then placed Licensee into the backseat of his patrol vehicle where he read Licensee the implied consent warnings and spoke to Licensee about submitting to a blood test. Trooper Kovacs testified Licensee was "kind of going back and forth about taking the test" and was "asking for further explanation about what the test meant." Reproduced Record (R.R.) at 16a. Trooper Kovacs further testified that he explained to Licensee he was transporting her to the police detention unit (PDU) so a nurse could perform a blood test, "what happens with the blood and how it works with the court and charging and that she can go to court and everything like that." R.R. at 17a. Trooper Kovacs testified that, upon arrival at the PDU, Licensee stated she was not willing to undergo a blood test. Trooper Kovacs deemed Licensee's decision not to undergo the blood test a refusal, and he released Licensee into the PDU's custody.

After the hearing, the trial court issued an order sustaining Licensee's appeal. PennDOT filed a notice of appeal to this Court, and the trial court directed it to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which it did. The trial court then issued an opinion pursuant to Pa. R.A.P. 1925(a) in which it reversed course, concluding PennDOT met its burden of

proving Licensee was subject to a one-year suspension of her operating privilege based on her refusal to submit to chemical testing. Thus, the trial court requested that this Court remand so it could deny Licensee's appeal and reinstate the one-year suspension. This matter is now before us for disposition.

On appeal,[2] PennDOT contends Trooper Kovacs credibly testified that he asked Licensee to submit to a blood test, and, at the PDU, Licensee refused to submit to the requested blood test. Thus, PennDOT maintains, the trial court's finding that Trooper Kovacs asked Licensee to submit to a blood test is supported by competent evidence.[3]

In response, Licensee argues that Trooper Kovacs never actually requested Licensee take a blood test; rather, he presented it as an optional test that could be beneficial to Licensee. Additionally, Licensee asserts Trooper Kovacs did not read paragraph 2 of Form DL-26B, which states: "I am requesting that you submit to a chemical test of blood." R.R. at 39a.

---

[2] Our review is limited to determining whether the trial court committed an error of law or abused its discretion and whether necessary findings of fact were supported by substantial evidence. Reinhart v. Dep't of Transp., Bureau of Driver Licensing, 946 A.2d 167 (Pa. Cmwlth. 2008).

[3] PennDOT also argues that Trooper Kovacs credibly testified: he observed Licensee commit multiple violations of the Vehicle Code; after he effectuated a traffic stop, Licensee displayed indicia of intoxication (odor of alcohol, slurred speech and bloodshot and glassy eyes); and he administered three field sobriety tests, which showed Licensee exhibited signs of impairment. PennDOT asserts the trial court correctly held this testimony satisfied PennDOT's burden of proving Trooper Kovacs had reasonable grounds to believe Licensee operated her vehicle in violation of Section 3802 of the Vehicle Code, 75 Pa. C.S. §3802. Licensee does not challenge the trial court's determination that Trooper Kovacs had reasonable grounds to believe Licensee was operating a motor vehicle while under the influence of alcohol. Therefore, we do not address this issue on appeal.

Licensee further maintains that, the fact she initially agreed to a blood test and changed her mind only after Trooper Kovacs repeatedly made misleading statements about the mandatory nature of the test suggests her refusal was not knowing and conscious. Indeed, Licensee contends, the record reveals that Trooper Kovacs essentially talked Licensee out of submitting to the test.

Determinations as to the credibility of witnesses and the weight assigned to their testimony are solely within the province of the fact-finder. Millili v. Dep't of Transp., Bureau of Driver Licensing, 745 A.2d 111 (Pa. Cmwlth. 2000). "As fact-finder, the trial court may accept or reject the testimony of any witness in whole or in part." Reinhart v. Dep't of Transp., Bureau of Driver Licensing, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). "Because questions of credibility are for the trial court to resolve, and not this Court, we may not reverse the trial court's order on the ground that it erroneously accepted and relied upon the testimony of [the arresting officer]." McGee v. Dep't of Transp., Bureau of Driver Licensing, 803 A.2d 255, 258-59 (Pa. Cmwlth. 2002); see also Sitoski v. Dep't of Transp., Bureau of Driver Licensing, 11 A.3d 12 (Pa. Cmwlth. 2010).

In order to sustain a one-year suspension of a licensee's operating privilege, PennDOT must establish a licensee: (1) was arrested by a police officer who had reasonable grounds to believe the licensee was operating a motor vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that refusal would result in a license suspension. See Regula v. Dep't of Transp., Bureau of Driver Licensing, 146 A.3d 836 (Pa. Cmwlth. 2016), appeal denied, 169 A.3d 9 (Pa. 2017).

5

Once PennDOT satisfies its burden of proof, the burden shifts to the licensee to prove she was physically incapable of performing the chemical test or she was incapable of making a knowing and conscious refusal. Dep't of Transp., Bureau of Driver Licensing v. Ingram, 648 A.2d 285 (Pa. 1994).

Section 1547(b) of the Implied Consent Law provides, in relevant part:

> **(b) Suspension for refusal.—**
>
> * * * *
>
>> (2) It shall be the duty of the police officer to inform the person that:
>>
>>> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and
>>>
>>> (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).…

75 Pa. C.S. §1547(b)(2)(i), (ii).

As to the requirement set forth in Section 1547(b)(2)(i), in Yourick v. Dep't of Transp., Bureau of Driver Licensing, 965 A.2d 341, 345 (Pa. Cmwlth. 2009) (en banc), a case involving the sufficiency of the warnings stated on an earlier version of the DL-26 Form, this Court explained (with emphasis added):

> There is no requirement in Vehicle Code Section 1547(b)(2)(i) that the implied consent warning issued by

6

an officer contain any specific wording. It must merely 'inform' a licensee that [her] 'operating privilege will be suspended upon refusal to submit to chemical testing.' 75 Pa. C.S. § 1547(b)(2)(i). The Pennsylvania Supreme Court affirmed this Court's holding that a warning is legally sufficient if it informs the licensee that refusing a request for chemical testing means that [she] 'will be in violation of the law and will be penalized for that violation.' Dep't of Transp., Bureau of Driver Licensing v. Weaver, [912 A.2d 259, 261 (Pa. 2006)] [(Weaver II)] citing Weaver v. Dep't of Transp., Bureau of Driver Licensing, 873 A.2d 1, 3 (Pa. Cmwlth. 2005) [(Weaver I)].[FN6]

> FN6. We acknowledge that Weaver examined the sufficiency of an earlier version of the implied consent warning under Section 1547(b)(2)(ii), as opposed to Section 1547(b)(2)(i); however, the variation in subsections and versions does not change the ultimate conclusion that an implied consent warning in Pennsylvania must notify a licensee that [she] will be in violation of the law and will be penalized for that violation if [she] refuses to submit to chemical testing.

In Weaver I, this Court, in considering the adequacy of the warnings contained in a prior version of the DL-26 Form, rejected a licensee's argument that a police officer was required to inform a licensee of all the possible penalties enumerated in Section 3804(c). We stated (with emphasis added):

> It is not the duty of the police to explain the various sanctions available under a given law to an arrestee to give that individual an opportunity to decide whether it is worth it to violate that law. It is sufficient for the police to inform a motorist that [she] will be in violation of the law and will be penalized for that violation if [she] should fail to accede to the officer's request for a chemical test.

7

<u>Weaver I</u>, 873 A.2d at 2.

Affirming our decision in <u>Weaver I</u>, the Supreme Court rejected the argument that an arresting officer must enumerate each of the enhanced penalties set forth in Section 3804(c) of the Vehicle Code. Indeed, the Court explained the plain language of Section 1547(b)(2)(ii) "requires only that the officer inform the arrestee that if [she] is convicted for DUI, refusal will result in additional penalties; it does not require the officer to enumerate all of the possible penalties …." <u>Weaver II</u>, 912 A.2d at 264.

Here, the trial court stated (with emphasis added):

> [T]here was a lengthy conversation where Trooper Kovacs explained the process of [Licensee] submitting to a blood test and informed her of the consequences of refusing to do so. <u>See</u> November 8, 2017 Bench Trial; Appellant Exhibit, DVD: 3/26/17. Trooper Kovacs read the required sections of the DL-26 Form to [Licensee].[4]

---

[4] Specifically, Form DL-26B states:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of blood.
>
> 3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to

**(Footnote continued on next page…)**

8

Id. at 0:00:52-0:03:26 (0:02:13- 0:02:26 omitted). While [Licensee] did ask questions regarding what would happen if she chose not to submit to the chemical testing, those questions did not render her so confused as to deprive her of a meaningful opportunity to comply with [Section] 1547(b) [of the Vehicle Code]. Id. Following the conversation with [Licensee], Trooper Kovacs transported [Licensee] to the PDU where she again was asked to submit to a blood test. N.T. at p. 13. Furthermore, [Licensee] reviewed and signed the DL-26 form where she indicated that she was refusing to submit to a blood test. Id. at [p]p. 34-35. As evidenced in the … transcript of their conversation, [Trooper] Kovacs said to [Licensee] 'If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months.' See November 8, 2017 Bench Trial; Appellant Exhibit, DVD; [Certified Transcription]: 3/26/17, p. 1; Time code: 0:01:09.

As such, [PennDOT] has satisfied its burden under Section 1547(b)(2) of the Vehicle Code.

Tr. Ct., Slip Op., 3/13/18, at 8. The record supports the trial court's determinations that Trooper Kovacs requested that Licensee submit to a blood test and informed Licensee of the consequences if she failed to do so. R.R. at 16a, 17a, 19a, 20a, 30a, 39a.[5]

---

**(continued…)**

speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

R.R. at 39a.

[5] The trial court's supported determinations distinguish this case from Everhart v. Commonwealth, 420 A.2d 13, 15 (Pa. Cmwlth. 1980), cited by Licensee, in which this Court remanded for further fact finding where it was unclear whether the arresting officer informed the licensee that his license *would* (rather than "could") be suspended if he refused to submit to a chemical breath test. In this case, Trooper Kovacs informed Licensee that, if she refused to **(Footnote continued on next page…)**

Nevertheless, Licensee asserts her refusal to submit to a blood test was not knowing and conscious because Trooper Kovacs emphasized Licensee *had the option* of submitting to a blood test. Relying on her own testimony, Licensee argues she could not have made a knowing and conscious decision to refuse testing in light of Trooper Kovacs' confusing statements as to the necessity of submitting to the blood test. "The determination of whether a licensee was able to make a knowing and conscious refusal is a factual one that is to be made by the trial court." Kollar v. Dep't of Transp., Bureau of Driver Licensing, 7 A.3d 336, 340 (Pa. Cmwlth. 2010).

Further, a licensee's self-serving testimony that she was incapable of providing a knowing and conscious refusal of a chemical test is insufficient to meet her burden of proving incapacity. Kollar. Rather, a licensee's incapacity defense must be supported by competent medical evidence where she suffers from no obvious disability. Id. The medical expert must rule out alcohol as a contributing factor in the licensee's inability to make a knowing and conscious refusal. Id. Thus, if a licensee's inability to make a knowing and conscious refusal of chemical testing is caused, in whole or in part, by the voluntary consumption of alcohol, the licensee's affirmative defense fails. Id. Here, the trial court did not credit Licensee's testimony that her decision to refuse testing was not knowing and

---

**(continued…)**

submit to a chemical test, her license "will be" suspended for at least 12 months. R.R. at 30a. Also, contrary to Licensee's repeated assertions, Trooper Kovacs credibly testified he "requested [Licensee] to take the blood test." R.R. at 20a. And, as explained below, Licensee signed Form DL-26B, indicating she was advised of Trooper Kovacs' request for a chemical test. R.R. at 39a.

conscious. Additionally, Licensee did not present expert medical testimony to rule out alcohol as a contributing factor in her purported inability to knowingly and consciously refuse chemical testing.

> Further,
>
> > [e]ven assuming … [Trooper Kovacs] told Licensee she did not have to take the blood test, this is not a misstatement of the law. Any person arrested for DUI has a right to refuse to submit to chemical testing. 75 Pa. C.S. § 1547(b)(1); Commonwealth v. Myers, 164 A.3d 1162 (Pa. 2017). Of course, the civil consequence under the Implied Consent Law for a refusal of chemical testing is a suspension of driving privileges. These warnings are included in the DL-26 Form.

Park v. Dep't of Transp., Bureau of Driver Licensing, 178 A.3d 274, 282 (Pa. Cmwlth. 2018).

In addition, as the trial court stated, Licensee signed Form DL-26B indicating she was advised of the implied consent warnings, which essentially provide that: Licensee was arrested for DUI in violation of Section 3802 of the Vehicle Code; the police officer requested Licensee submit to a chemical blood test; if Licensee refused to submit to the blood test, her operating privilege would be suspended for at least 12 months; and Licensee had no right to speak with an attorney or anyone else before deciding whether to submit to testing. R.R. at 39a. Further, as set forth above, Trooper Kovacs credibly testified that he requested that Licensee submit to a chemical blood test, and he read Licensee the warnings on Form DL-26B. R.R. at 16a, 17a, 19a, 20a.

Based on the foregoing, we agree with the trial court's assessment of the merits as expressed in its Pa. R.A.P. 1925(a) opinion, and we therefore reverse the trial court's post-hearing order. As a result, PennDOT's suspension is reinstated.

_____
ROBERT SIMPSON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kelley Coogan | : | |
| | : | |
| v. | : | No. 1915 C.D. 2017 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

## **O R D E R**

**AND NOW**, this 4th day of January, 2019, the order of the Court of Common Pleas of Philadelphia County is **REVERSED**. The one-year suspension of Kelley Coogan's operating privilege is **REINSTATED**.

ROBERT SIMPSON, Judge