J-A06029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| BRIAN KEITH WALTERS | |
| Appellant | No. 1377 EDA 2014 |

Appeal from the Judgment of Sentence December 18, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000912-2012

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                **FILED APRIL 24, 2015**

Brian Keith Walters appeals the judgment of sentence entered December 18, 2013, in the Montgomery County Court of Common Pleas. The trial court imposed an aggregate sentence of 10 to 20 years' imprisonment following Walters' jury conviction of robbery, burglary, and persons not to possess firearms.[1]  On appeal, Walters challenges the weight of the evidence supporting his convictions and the discretionary aspects of his sentence.  For the reasons set forth below, we affirm.

The testimony presented at Walters' jury trial was aptly summarized by the trial court in its Opinion dated June 10, 2014 at pages 1–7, and we need not repeat it here.

---

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 3502(a), and 6105(a)(1), respectively.

On February 7, 2013, a jury found Walters guilty of robbery, burglary and persons not to possess firearms. On December 18, 2013, Walters was sentenced to a term of five to 10 years' imprisonment for robbery, four to eight years' imprisonment for burglary, and one to two years' imprisonment for persons not to possess firearms.[2] The trial court ordered the sentences to run consecutively to one other, for an aggregate prison term of 10 to 20 years' incarceration. Walters filed a timely post sentence motion, which the trial court subsequently denied. This timely appeal followed.[3]

_____

[2] Prior to sentencing, the Commonwealth notified Walters of its intent to seek a mandatory minimum five-year prison term for the robbery and burglary charges pursuant to 42 Pa.C.S. § 9712 (mandatory five-year minimum sentence if offender visibly possessed a firearm during a crime of violence). Alternatively, the Commonwealth sought to apply a deadly weapon enhancement to increase the guideline ranges for those convictions. *See* N.T., 12/18/2013, at 4-5; 204 Pa.Code 303.10(a). Walters, however, opposed the application of Section 9712 based upon the United States Supreme Court's decision in ***Alleyne v. United States***, 133 S.Ct. 2151 (U.S. 2013). After considering argument by both parties, the trial court decided **not to impose** either the mandatory minimum at Section 9712 or the deadly weapon enhancement at Section 303.10(a). ***See*** N.T., 12/18/2013, at 20.

[3] On May 5, 2014, the trial court ordered Walters to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Walters complied with the trial court's directive, and filed a concise statement on May 19, 2014.

In his first issue on appeal, Walters challenges the weight of the evidence supporting his convictions.[4] He argues the Commonwealth's identification testimony was unreliable and the Commonwealth failed to demonstrate he had the motive or opportunity to commit the crime. Walters also emphasizes the lack of physical evidence linking him to the home invasion. Lastly, he claims he presented credible alibi evidence proving that he was not one of the perpetrators.

Appellate review of a weight of the evidence claim is well-established:

A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. *Commonwealth v. Widmer*, 560 Pa. 308, 318–20, 744 A.2d 745, 751–52 (2000); *Commonwealth v. Champney*, 574 Pa. 435, 443–44, 832 A.2d 403, 408–09 (2003). On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination. *Widmer*, 560 Pa. at 321–22, 744 A.2d at 753; *Champney*, 574 Pa. at 444, 832 A.2d at 408.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014).

In the present case, the trial court found the verdict did not shock its sense of justice. Rather, the court concluded "[t]he jurors were fully entitled

---

[4] We note that Walters preserved his weight claim in a post-sentence motion filed before the trial court. *See* Pa.R.Crim.P. 607(A)(3).

to credit the evidence presented by the Commonwealth." Trial Court Opinion, 6/10/2014, at 15. We find no reason to disagree.

With respect to Rebecca Holland's identification of Walters' voice,

> [i]t is settled law that "[a] witness may testify to a person's identity from his voice alone." Moreover, evidence of identification need not be positive and certain to sustain a conviction. Additionally, **the weight to be accorded voice identification testimony is a question for the trier of fact.**

**Commonwealth v. Jones**, 954 A.2d 1194, 1197 (Pa. Super. 2008) (citations omitted and emphasis supplied), *appeal denied*, 962 A.2d 1196 (Pa. 2008). **See also In re K.A.T., Jr.**, 69 A.3d 691, 696 (Pa. Super. 2013), *appeal denied*, 81 A.3d 78 (Pa. 2013).

Walters contends that Rebecca Holland's identification of his voice was suspect since she "had very few opportunities to hear [his] voice, and she certainly did not hear it [in] a variety of contexts to allow meaningful comparison." Walters' Brief at 18. Rather, he argues she spoke to him, "in total, between six and eight times though only one instance lasted longer than twenty minutes, and most were shorter." **Id.** Walters also emphasizes that Ed Holland, who spoke with him at length, was unable to idenitify either of the intruders.

The trial court explained, however, that Rebecca Holland "testified definitely that she recognized [Walters'] voice both when he spoke to her and when he addressed her husband." Trial Court Opinion, 6/10/2014, at 12. The jurors were aware of the number of encounters Rebecca Holland

- 4 -

had with Walters, and the opportunities she had to become familiar with his voice. The court concluded:

> Stated directly, it was for the jurors to determine whether these encounters gave Ms. Holland sufficient familiarity with [Walters] in order to be able to recognize his voice, and there is nothing shocking to this court's sense of justice in their determination that she did recognize [him].

*Id.* at 13. Walters has not demonstrated that the trial court's ruling was an abuse of discretion.

Walters also challenges Rebecca Holland's identification of his eyes, when: (1) Rebecca Holland was under the stress of being attacked at the time she made the identification; (2) she never mentioned Walters' distinctive eyes to the police; (3) she testified it was too dark to see if the intruders were wearing gloves; and (3) Ed Holland testified it was "pitch black" in the hallway. Walters' Brief at 19-20.

However, a review of the record reveals Rebecca Holland testified she did not mention Walters' eyes to the police because she told them, definitively, that Walters was the intruder. N.T., 2/5/2013, at 108. Moreover, although the hallway was dark, Rebecca Holland stated that she left a light on in the bathroom, located off the bedroom and right next to the dresser. *Id.* at 58. She recognized Walters' eyes after he entered her room and was "[i]nches" away from her face, pushing her into the dresser. *Id.* at 59. Accordingly, it was within the discretion of the jury to determine

whether Rebecca Holland could identify the intruder's eyes under those circumstances.[5]

Walters also challenges the Commonwealth's evidence demonstrating he had the opportunity to familiarize himself with the Hollands' home and "learned things about the family that would lead him to believe that they had items of value in their home." Walters' Brief at 20. Walters contends that, when offered, he refused to take the code to the Hollands' home security system, and that Ed Holland testified he never revealed to Walters that he had two safes in his bedroom. Moreover, Walters claims, "it is quite clear that many other people had access to the home" including contractors and the teenaged children's friends. *Id.* at 21. Therefore, he asserts "the Commonwealth's argument[s] surrounding motive and opportunity are highly flawed and unsustainable." *Id.*

We disagree. As the trial court explained, "[t]he jurors heard evidence from which they could readily determine that at least one of the perpetrators

_____

[5] We note that Rebecca Holland also testified that she recognized Walters' atypical body type. She explained:

It's not like he's the typical 5'11", 170-pound man. You know, he – he's got more build about him. His head is shaped differently.

It's just all those things that when you are that close to somebody it becomes really obvious.

N.T., 2/5/2013, at 60.

of the home invasion had a prior familiarity with the Holland residence." Trial Court Opinion, 6/10/2014, at 13. Ed Holland testified that, after he retrieved his gun, the perpetrators fled the residence "like lightning" and then "navigat[ed]" the first floor of the home as if "they definitely knew the format of the house." N.T., 2/5/2013, at 150. The robbers also left the home through the only door not connected to the home security system. Further, the trial court noted the jurors "also heard testimony from which they could infer that that perpetrators were specifically targeting the Hollands' bedroom on the second floor" as if they knew where the valuables were stored. Trial Court Opinion, 6/10/2014, at 14. At least one of the armed gunmen knew Ed Holland by name, and stated "Ed, don't get it" when he went to the closet to retrieve his gun. N.T., 2/5/2013, at 64. Furthermore, the jurors heard testimony from Ed Holland's brother, who claimed that the day before the home invasion, Walters was on the second floor of the home, by himself, for approximately 15 minutes. *Id.* at 181. Accordingly, despite the fact that other people may have had access to the Hollands' residence, the jurors were presented with sufficient circumstantial evidence that Walters, whom Rebecca Holland specifically identified, had the opportunity to familiarize himself with the layout of the home, and the valuables secreted in the second floor master bedroom.

With regard to Walters' challenge to the lack of physical evidence connecting him to the crime, he argues the Commonwealth presented no fingerprint or DNA evidence, and that he and his wife denied ever receiving

the Eagles pillowcase from the Hollands. However, the Commonwealth is not obligated to provide fingerprint or DNA evidence to secure a conviction. *See Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (Commonwealth may sustain its burden of proof beyond a reasonable doubt "by means of wholly circumstantial evidence."), *cert. denied*, 135 S. Ct. 145, (U.S. 2014). Furthermore, the jury was entitled to credit the testimony of both Rebecca and Ed Holland who stated they gave an Eagles pillowcase to Walters a few days before the crime. They also identified the pillowcase recovered after the home invasion as the same one they had given to Walters. *See Commonwealth v. Barker*, 70 A.3d 849, 855 (Pa. Super. 2013) (en banc) ("[T]he factfinder is free to accept as true all, part, or none of the evidence and to base its verdict upon its determination of credibility."), *appeal denied*, 87 A.3d 814 (Pa. 2014). Accordingly, Walters' claim regarding the lack of physical evidence is unavailing.

Lastly, Walters argues the verdict was against the weight of the evidence because he presented credible alibi evidence that he was asleep in bed with his wife at the time of the crime. Indeed, he emphasizes that his wife testified "[s]he was 'one hundred percent' sure that he was with her the entire night [and i]n fact, he was sleeping so soundly … that she had to smack [him] to wake him." Walters' Brief at 23.

The trial court addressed this claim as follows:

> [Walters] and his wife testified that he was home in bed at the time of the crime. Ms. Holland testified that he was a perpetrator of the home invasion. It was for the jurors to

- 8 -

evaluate the credibility of this conflicting testimony and to resolve it as they saw fit. We note that, in reaching their determination, the jurors were presented with a record seemingly devoid of evidence that Ms. Holland would have any reason to lie concerning her identification of [Walters] as one of the perpetrators. Likewise, no evidence was introduced that would seemingly indicate a motivation on the part of either Mr. or Ms. Holland to lie concerning either their claim that they had given Eagles pillowcases to [Walters], or in their identification of the Eagles pillowcase discovered in the vicinity shortly after the crime as a pillowcase they had given to [Walters]. Further, the jury plainly would have been entitled to wonder why, if Ed Holland were lying concerning this pillowcase in order to see [Walters] convicted, he would not *also* have lied and joined his wife in specifically identifying [Walters] as one of the perpetrators. Mr. Holland, however, clearly testified that he was *not* able to identify either of the intruders. We note further that the record reveals no motivation for Chris Holland to lie in his testimony that he had observed [Walters] go upstairs at the Holland residence the day before the crime – testimony directly contradicted by Ms. Harris.

By contrast, the jurors were entitled to determine Ms. Harris *did* have a motivation to lie – namely to protect her husband. In this regard, we note that the jurors heard Ms. Harris herself acknowledge that, when [Walters] was arrested, she told him: "Brian, don't say anything. I know how you are." (N.T., February 6, 2013, pp. 78-79). As [the prosecutor] suggested to the jurors, this could be interpreted as an odd comment for Ms. Harris to make to [Walters] if Ms. Harris knew that [he] had been in bed with her all night. The jurors were also fully entitled to agree with [the prosecutor's] argument that the demeanor of the Hollands on the witness stand was that of credible, trustworthy witnesses, whereas Ms. Harris' testimony appeared "rehearsed."

Trial Court Opinion, 6/10/2014, at 11-12 (emphasis in original). We detect no basis upon which to disturb the court's ruling. Accordingly, we conclude Walters is entitled to no relief on his challenge to the weight of the evidence.

In his second claim, Walters contends the sentence imposed by the trial court was "extremely excessive." Walters' Brief at 24. Specifically, he

argues that, in imposing three consecutive sentences, the trial court "focused on the severity of the crimes and the retribution of the complainants and did not consider the rehabilitative needs of [Walters] at all." *Id.* at 7.

The standard of review for a claim challenging the discretionary aspects of sentencing is well-established:

> Sentencing is a matter vested in the sound discretion of the judge, and will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009).

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Hoch*, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

***Commonwealth v. Edwards***, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Here, Walters complied with the procedural requirements for this appeal by filing a post-sentence motion for reconsideration of sentence and a timely notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to ***Commonwealth v. Tuladziecki***, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, we must determine whether Walters raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted).

In his Rule 2119(f) statement, Walters contends the trial court "failed to carefully consider all relevant facts as set forth in [42 Pa.C.S. § ] 9721(b) of the Sentencing Code and imposed a sentence that was clearly unreasonable." Walters' Brief at 7. Such claim raises a substantial question for our review. ***See Commonwealth v. Riggs***, 63 A.3d 780, 786 (Pa. Super. 2012), *appeal denied*, 63 A.3d 776 (Pa. 2013).

In the argument portion of his brief, Walters acknowledges that each of the individual sentences was imposed within the standard range of the sentencing guidelines. **See** Walters' Brief at 24. However, he contends the court's decision to run the sentences consecutively resulted in an aggregate sentence that is "extremely excessive as it relates to the nature of the offense, the sentencing guidelines and [Walters'] background."[6] **Id.** With the exception of listing the mitigating factors he presented to the trial court, Walters does not explain why the trial court's sentence is unreasonable, or why his rehabilitative needs warrant a lesser sentence.

A review of the sentencing transcript reveals the trial court thoroughly considered the requisite sentencing factors set forth in Section 9721(b), including "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). **See** N.T.,

_____

[6] To the extent Walters challenges the trial court's imposition of consecutive sentences, we note that the decision whether to impose consecutive sentences is generally left to the discretion of the trial court, and raises a substantial question for our review "in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013) (quotation omitted), *appeal denied*, 77 A.3d 1258 (Pa. 2013). No such "extreme circumstances" exist in the present case. Indeed, Walters was sentenced on three felony convictions as a result of his involvement in a middle-of-the-night armed home invasion.

12/18/2103, at 74-81. The court was cognizant of, and sympathetic to, the impact the sentence would have on Walters' family, and particularly his children. *See id.* at 76-77. However, the court balanced those considerations with the impact the crime had on the victims. *See id*. at 78 (noting the testimony of Rebecca Holland that she woke up in the middle of the night, opened her bedroom door, and had a gun in her face); *id.* (recalling testimony that the children in the home "were lying on a floor in another room because they were too scared to move."). In its opinion, the trial court explained that it "balanced all relevant factors and determined that the aggregate sentence ultimately imposed was called for." Trial Court Opinion, 6/10/2014, at 17. We find no abuse of discretion, and accordingly, Walters' second issue on appeal fails.

Because we conclude the trial court did not abuse its discretion in either rejecting Walters' weight of the evidence claim, or imposing an aggregate 10 to 20 year sentence, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2015

- 13 -