J-S67024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LEROY BROOKS | |
| Appellant | No. 2840 EDA 2014 |

Appeal from the Judgment of Sentence August 22, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005504-2011

BEFORE: FORD ELLIOT, P.J.E., RANSOM, J., and STEVENS, P.J.E*

MEMORANDUM BY RANSOM, J.:                    **FILED OCTOBER 19, 2016**

Leroy Brooks (Appellant) appeals from the judgment of sentence of sixteen and one-half to thirty-five years of incarceration with four years of probation to be served consecutively, following a jury trial resulting in his conviction for three counts of robbery, conspiracy to commit robbery, burglary, firearms not to be carried without a license, and carrying firearms in public in Philadelphia.[1]  We affirm.

In February of 2011, Appellant and an unidentified male forced the victim, Kendall Worrell, into his Philadelphia dwelling at gunpoint whereupon they entered.  Notes of Testimony (N.T.), 6/16/14 12; N.T., 6/23/14, at 35-37, 118-19; N.T., 6/24/14, at 13-14.  Worrell shared the home with his

---

[1] Respectively, **see** 18 Pa.C.S. §§ 3701(a)(1), 903(c), 3502(a), 6106(a)(1), and 6108.

*Former Justice specially assigned to the Superior Court.

parents, Keisha Green Wade and James Wade, and two young siblings, all of whom were present at the time of the incident. *Id.* Though the other male wore a hood, Appellant's face was uncovered throughout the duration of the incident.[2] N.T., 6/23/14, at 155. Appellant had a teardrop-shaped tattoo on his face. Appellant asked Worrell at gunpoint where money was located, then Appellant and his accomplice searched the basement. N.T., 6/24/14, at 13-18. Appellant then woke up each of Worrell's parents by tapping or hitting them with a silver gun and demanding money. N.T., 6/23/14, at 38-39, 51, 53-54, 119-25. Approximately $600-1,200 was forcibly taken from the pockets of Worrell's father. N.T., 6/26/14, at 144. Together, the men ransacked the house in search of other valuables and eventually left with the victims' cell phones, a PlayStation video game system, money, a laptop computer and a tablet computer. *Id.* at 64, 126-27, 144. The incident lasted for two hours, and the police were notified of the incident immediately.

The victims were transported to a police station where they provided police with a physical description of the suspects. The next day, characteristics were entered into a photo imager program on a computer. The program generated a series of eight photographs to be viewed at once, and Worrell, who was the first to attempt to identify the suspect, selected

_____

[2] Appellant was tried with co-defendant Cordero Smith, who was acquitted on all charges. Smith's case was docketed as CP-51-CR-0005665-2011.

Appellant out of the photo array.[3]  The photo of the Appellant was then added to a photo array featuring seven other males that was shown to Mrs. Wade.  Appellant's photo was in the first position, and he was one of three persons who had a teardrop face tattoo in the array.  Isolated from Worrell and her husband, Mrs. Wade identified Appellant within seconds.  Mr. Wade also positively identified Appellant from the photo array independent of the other two victims.

In June of 2014, Appellant moved to suppress the identifications of the three victims, which was denied by the trial court following a hearing. Following trial, the jury found Appellant guilty of the aforementioned charges.  The Appellant was sentenced to five to ten years' incarceration for each count of robbery, to be served consecutively; plus one and one-half to five years' incarceration each for the burglary and the conspiracy, to be served concurrent to each other, yet consecutive to the robbery charges; followed by four years of reporting probation for each violation of the Uniform Firearms Act, which were to run concurrent to each other. Appellant filed post-sentence motions, which were denied.  Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement.  The trial court issued a responsive opinion.

_____

[3] In the fifteen minutes it took Worrell to positively identify Appellant, he viewed approximately 100 images.  N.T., 6/26/14, at 18-20.  Based on the records of the photo imager, Appellant's photograph appeared before Worrell at least four times prior to his positive identification.  *Id.* at 18-20, 164-65.

Appellant presents the following questions for our review:

1.     Was the evidence presented at trial sufficient as a matter of law to support the conviction for all crimes [for] which [Appellant] was convicted [or…] where the properly admissible evidence of record does not establish beyond a reasonable doubt that [A]ppellant committed those crimes as: there was no evidence corroborating the identification made [by] the complainant(s); the co-defendant also identified by complainant was acquitted by the same jury upon the same evidence; no proceeds of the robbery were recovered; the weapons utilized in the crime were not recovered; no forensic evidence linked [A]ppellant to crimes; and, the circumstances of the identification of [A]ppellant as a perpetrator by the witness renders the identifications unreliable?

2.     Is the verdict for all crimes which [A]ppellant was convicted of against the weight of evidence and so contrary to the evidence that it shocks one's sense of justice in light of the circumstances as set forth in the evidence presented at trial and referenced in the preceding question?

3.     Did the trial court err when it denied [A]ppellant's pre-trial motion to suppress identification?

4.     Did the trial court err when it denied the motion to withdraw of [A]ppellant's trial counsel and did not declare a mistrial of manifest necessity?

5.     Is the sentence in this matter unduly harsh and excessive under the circumstances?

Appellant's Brief at 8-9.

In his first issue, Appellant purports to challenge the sufficiency of the evidence presented at trial. Appellant offers no analysis of any particular elements that comprise the charges against him.[4] Rather, according to

_____

[4] For example to prove robbery, the Commonwealth must establish beyond a reasonable doubt that Appellant, in the course of committing a theft,
*(Footnote Continued Next Page)*

- 4 -

Appellant, the identification of the three eyewitnesses was unreliable and there was neither forensic evidence nor proceeds of the crime to corroborate the identification made by the complainants. *See* Appellant's Brief at 26-32.

When examining a challenge to the sufficiency of the evidence, our standard of review is:

> [W]hether there was sufficient evidentiary support for a jury's finding to this effect, the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008) (citations omitted).

Though labeled a challenge to the sufficiency of the evidence presented at trial, Appellant merely attacks the *credibility* of the witnesses who testified. "[A]n attack on witness credibility … [is] a matter far removed

_____
*(Footnote Continued)*

threatened another with or intentionally put him in fear of immediate serious bodily injury. *See Commonwealth v. Ennis*, 574 A.2d 1116, 1119 (Pa. Super. 1990); 18 Pa.C.S.A. § 3701(a)(1). However, Appellant neither identifies these elements nor argues how the evidence presented by the Commonwealth fails to establish them.

from the purview of an appellate court given the remote nature of our review." **Commonwealth v. Barker**, 70 A.3d 849, 855 (Pa. Super. 2013) (rejecting an attack on witness credibility in the context of a sufficiency challenge). No relief is due Appellant on this ground.

Appellant's third issue directly impinges upon his second claim, thus Appellant's third issue will be discussed in advance of that claim. In his third issue, Appellant asserts the identification process was unreliable, as Worrell viewed multiple photos of the Appellant before making a positive identification. Appellant also maintains that the identification process was unduly suggestive, as the photo identified by Worrell was used in the first position of an array shown to Worrell's parents.

We review the denial of a suppression motion as follows:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Commonwealth v. Williams**, 941 A.2d 14, 26-27 (Pa. Super. 2008) (*en banc*) (internal citations and quotation marks omitted).

- 6 -

"When analyzing the admission of identification evidence, a suppression court must determine whether the challenged identification has sufficient *indicia* of reliability." **Commonwealth v. Sanders**, 42 A.3d 325, 330 (Pa. Super. 2012) (internal citation and quotation marks omitted). "This question is examined by focusing on the totality of the circumstances surrounding the identification." **Id.** "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics." **Commonwealth v. Fisher**, 769 A.2d 1116, 1126 (Pa. 2001).

In the instant case, the circumstances surrounding Appellant's identification rendered it reliable. Immediately after Appellant and his accomplice fled the home, the three victims gave descriptions of each suspect to police. Worrell and his parents had ample time during the two-hour incident to observe the Appellant's tattooed face, which was uncovered throughout the duration of the incident. N.T., 6/24/14, at 13-18; N.T., 6/23/14, at 155. Additionally, each witness was in close proximity to the Appellant at some point during his or her interaction.

Appellant's characteristics were entered into the photo imager program, which computer-generated photo arrays matching the descriptions. N.T., 6/16/14, at 6, 19. Worrell and his parents identified the Appellant a day after the incident. The fact that Appellant's photo appeared four times before Worrell positively identified him out of approximately 100 photographs viewed in a fifteen-minute span, did not automatically make his

identification suggestive.[5]  ***Id.*** at 23; ***see Commonwealth v. Moore***, 633 A.2d 1119, 1126 (Pa. 1993) (array of fifteen photos was not unnecessarily suggestive, even though two photographs were of defendant).  At least two other individuals were depicted in the photo array two-to-three times before Worrell's identification.  N.T., 6/16/14, at 23-24; ***see*** Commonwealth Exhibit 2.  Upon identifying Appellant from the photo array, Worrell specifically noted that Appellant was the one "wearing nothing on his face."  ***Id.*** at 11-12.  Detective Robert Conway testified that he did not make any suggestions to Worrell regarding his selection.  ***Id.*** at 8.  The totality of the circumstances surrounding Worrell's identification did not suggest a substantial likelihood of misidentification, thus the identifications of his parents were untainted by the inclusion of Appellant's photo in the subsequent, computer-generated array.[6]

The array shown to each of Worrell's parents contained photographs of eight black men who appear to be of similar age and to have similar facial features, hairlines, and facial hair.[7]  Three individuals in the array had

---

[5] When a suspect is arrested on multiple occasions, his photograph can appear multiple times in the photo imager program.  N.T., 6/16/14, at 18-19.

[6] Detective Conway testified that the same array was shown to Mr. and Mrs. Wade, and that each victim was isolated when viewing the photo array. N.T., 6/16/14, at 12-14.

[7] The certified record contains a black and white photocopy of the photo array, marked as Commonwealth's Exhibits 9 and 12.

teardrop tattoos on their face. *See* Commonwealth Exhibit 12. Appellant's position in the photo array is of no moment, as our inquiry hinges on whether Appellant's photograph "stands out" more than the others. **See Fisher,** 769 A.2d at 1126. Thus, we find no abuse of discretion in the trial court's assessment that the array was not unduly suggestive, and its corresponding decision to admit the evidence.

Returning to Appellant's second issue, Appellant argues his convictions were against the weight of evidence and incorporates his argument attacking the credibility of the witnesses found in his sufficiency challenge.

The following principles apply to our review of a weight of the evidence claim:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> **Commonwealth v. Small**, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003), *cert. denied*, 542 U.S. 939, (2004) (most internal citations omitted).

Appellant maintains that the sole evidence relied upon was the identifications of Worrell and his parents, which he argues are unreliable and

unduly suggestive. As discussed in Appellant's third claim **supra**, the three victims independently identified Appellant from photographic arrays the day after the robbery. All three identified him a second time at trial.[8] Defense counsel thoroughly questioned Worrell about his failure to identify the Appellant the first time his picture appeared in the photo array, and questioned both Worrell and Mrs. Wade on their prior misidentifications.[9] It was the function of the jury, as fact-finder to evaluate the credibility of the witnesses and determine the weight to accord to their identification testimony.

Appellant also contends that the fact that his co-defendant was acquitted undermines the validity of his conviction. We find this argument unpersuasive, as the facts established Appellant's face was uncovered

_____

[8] Appellant cites heavily to **Commonwealth v. Walker**, 920 A.3d 766 (Pa. 2014) to challenge the reliability of eyewitnesses generally, and in the instant case. Appellant's Brief at 27-30, 33-35, 37-44. However, Appellant's reliance on **Walker** is misplaced, as our Supreme Court held that the admission of expert testimony regarding eyewitness identification is no longer *per se* impermissible in our Commonwealth – an issue not present in the instant matter.

[9] Shortly after the incident, Worrell identified a man as the accomplice, however the man was subsequently released following an investigation by police. N.T., 6/25/14, at 92-98, 126-27, 158-60, 189-90; N.T., 6/26/14, at 58-59. On the night Mrs. Wade identified Appellant, she told police that she had seen him in a courtroom in 2009 when she was testified during an unrelated shooting she witnessed. N.T., 6/23/14, at 77-78, 82; N.T.. 6/26/14, at 21-22. The Commonwealth stipulated that Appellant was not, in fact in the courtroom referenced by Mrs. Wade in 2009. N.T., 6/26/14, at 55.

throughout the duration of the incident, whereas the face of his accomplice was obstructed by a hood. The jury was free to believe all, part, or none of the evidence and determined that the three eyewitnesses who individually identified Appellant, were credible. Accordingly, we discern no abuse of discretion in the trial court's finding that the verdict was not against the weight of the evidence.

In his fourth issue, Appellant asserts that the trial court should have granted trial counsel's motion to withdraw and in the alternative asserts the court should have declared a mistrial due to Appellant's own, unsolicited outburst.

The grant or denial of court-appointed trial counsel's petition to withdraw is within the sound discretion of the trial court and, as such, should not be overturned unless we find an abuse of discretion. **Commonwealth v. Tuck**, 469 A.2d 644, 650 (Pa. Super. 1983) (citing **Commonwealth v. Segers**, 331 A.2d 462 (Pa. 1975)); **see also Morris v. Slappy**, 461 U.S. 1, (1983) (concluding that Sixth Amendment right to counsel does not include right to a meaningful attorney-client relationship).

On the third day of trial, outside the presence of the jury, Appellant asserted that his trial attorney was racist, biased against him, and did not like Muslims. N.T., 6/24/14, at 5-6. Counsel denied the accusations, characterized them as "ridiculous", and said, "I don't want to represent him now." **Id.** at 8. The trial court did not find Appellant's accusations credible, and instructed Appellant not to repeat the accusations in front of the jury.

*Id.* at 9. During Worrell's direct examination, in the presence of the jury, Appellant said of Worrell, "He lying. He a rapist, man…" *Id.* at 19. Immediately thereafter he said of trial counsel, "[A]nd I told you he don't want to represent me." *Id.* The jury was promptly escorted from the courtroom. *Id.* The trial court held Appellant in criminal contempt and issued a curative instruction to the jury when they returned to the courtroom. *Id.* at 27, 29-30. The trial court explained its reasons for denying counsel's motion to withdraw:

> [D]efense counsel motioned to withdraw from representing defendant after [Appellant] made spurious accusations against his attorney in an outburst in open court … The outburst by [Appellant], in which he also accused the witness of being a rapist, was a failed strategic choice on his part to force a mistrial. This court believed that no breakdown in the attorney-client relationship had occurred and understood that the attorney's motion to withdraw was merely a reaction to what was being said about him in open court by [Appellant]…
>
> If this court had allowed the motion to withdraw[], [Appellant] would have received exactly what he was looking for with his outburst. Either through a mistrial or by insulting his attorney to the point of forcing a withdrawal, [Appellant] was attempting to terminate his trial at a stage where it seemed the evidence was not going in his favor.

Trial Court Opinion, January 26, 2016, at 12-13.

The trial court acted properly here. Appellant's outburst came directly after Worrell had identified him as the person who robbed his family, and Appellant had already been identified by Mr. and Mrs. Wade the day prior, whereas his co-defendant was not identified. The

trial court recognized the "conflict" here resulted from Appellant's own, calculated conduct and denied counsel's motion.

With regard to the denial of mistrials, the following standards govern our review:

> In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 877–78 (Pa. Super. 2012), appeal denied, 69 A.3d 600 (Pa. 2013) (citations omitted).

"The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Id*. at 878 (citations omitted). A mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice. *Commonwealth v. Lawson*, 546 A.2d 589, 594 (Pa. 1998). Additionally, "where counsel fails to request a mistrial when the alleged prejudicial event occurs, the issue is not preserved for appellate review. *Commonwealth v. Chimenti*, 524 A.2d 913, 920 (Pa. Super. 1987).

Here, the Appellant failed to make a motion for mistrial at the time of this incident; therefore, we find the issue waived for purposes of appeal. ***Id.*** Provided the issue had been properly preserved, Appellant would not be entitled to relief, as the trial court's cautionary instruction cured any resulting infirmity from Appellant's outburst. ***See Lawson***, 546 A.2d at 594.

In his fifth issue, Appellant characterizes the instant crimes as part of a single episode and contends that his sentence was unduly harsh and excessive under the circumstances. Appellant's challenge is to the discretionary aspects of his sentence. ***See, e.g.***, ***Commonwealth v. Lutes***, 793 A.2d 949, 964 (Pa. Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 913 (Pa. Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (most citations omitted), *appeal denied*, 909 A.2d 303 (Pa. 2006).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008) (emphasis in original) (internal quotation marks omitted), *appeal denied*, 954 A.2d 895 (Pa. 2008), *cert. denied*, 129 S. Ct. 2450, (2009).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *See Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra,* 752 A.2d at 912-13. A claim that a sentence is manifestly excessive might raise a substantial question if the

appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. *See Mouzon*, 812 A.2d at 627. The court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is generally not viewed as raising a substantial question. *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 598 (Pa. Super. 2010); *see also Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995) (explaining that a defendant is not entitled to a 'volume discount' for his or her crimes).

As an initial matter, we note that Appellant filed a timely notice of appeal, preserved the instant issue in a motion to reconsider sentence, and included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, our analysis turns on whether there is a substantial question that the sentence appealed from is inappropriate under the Sentencing Code. *See* 42 Pa.C.S.A. § 9781(b). We conclude Appellant has failed to present a substantial question for our review.

Appellant argues that the sentencing scheme in the instant case "result[ed] in a single criminal episode being … quadruply [*sic*] counted against the Appellant, as Appellant received consecutive sentences on three counts of robbery, and conspiracy/burglary." Appellant's Brief at 50. He asserts the sentence was "clearly unreasonable." However, the trial court's decision to sentence consecutively did not raise the aggregate sentence to an excessive level in light of Appellant's criminal conduct. If Appellant had

robbed three individuals on three separate days, and then burglarized an occupied home, and had been sentenced in separate proceedings, the combined sentence of sixteen and one-half to thirty-five years' incarceration followed by four years of reporting probation for the three criminal episodes would not strike most as a sentence grossly disparate to Appellant's conduct. No relief is due. *See Hoag*, 665 A.2d at 1214.

Moreover, Appellant's aggregate sentence was composed exclusively of standard range guideline sentences and was less than the statutory maximum for the crimes charged.[10]  At the time of sentencing, and in its opinion, the trial court took great care to outline its procedure used to arrive at Appellant's individualized sentence.  N.T., 8/22/14, at 5-50; Trial Court Opinion, at 14-15.  The trial court considered: (1) the presentence report, (2) the arguments of counsel and the Commonwealth, (3) the statements of Appellant and his family members, (4) the gravity of the offense, (5) the Appellant's background and criminal history, (6) the Appellant's conduct during trial; and crafted a sentencing scheme that allowed the penalty for some of the crimes to be served concurrently.  *Id.* at 4, 8-14, 33-34.

Judgement of sentence affirmed.

---

[10] For the three charges of robbery alone, the trial court notes, "based on the severity of the crime and the defendant's prior record score, the sentencing guidelines called for the minimum sentence to be between fifty-four [] and sixty-six [] months with a range of twelve (12) months mitigated or aggravated."  Trial Court Opinion, at 13-14.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date: 10/19/2016